IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JULIAN GUARDADO,                    )
                                    )
          Plaintiff,                )
                                    )
          v.                        )
                                    )    1:10cv151 (JCC)
UNITED STATES OF AMERICA,           )
ET AL.,                             )
                                    )
          Defendants.               )

**M E M O R A N D U M   O P I N I O N**

This case involves a suit for money damages by a
Salvadorian national who claims he was improperly removed from
the United States.   Defendants move to dismiss or for summary
judgment for lack of subject matter jurisdiction pursuant to
Federal Rule of Civil Procedure 12(b)(1), for failure to state a
claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and
for lack of a genuine dispute of material fact pursuant to
Federal Rule of Civil Procedure 56(c).   For the following
reasons, the Court will grant Defendants' Motion.

### I. Background

A.    Statutory Background

In 1991, a class action settlement known as the "ABC
Settlement" resulted in certain benefits for Salvadoran class
members, including the right to reapply for asylum and the right

to remain in the U.S. during the asylum application period. *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC"). Class members subsequently apprehended entering the United States, however, are inapplicable for benefits. *Id.* at 800.

In 1997, Congress enacted the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. 105, 100, 111 Stat. 2193 (1997), among other things permitting ABC class members to apply for suspension of deportation so long as they were not apprehended reentering the U.S. after December 19, 1990. Congress supplemented NACARA in 2000 by passing the LIFE Act Amendments, providing that aliens cannot be barred from seeking cancellation of removal simply because of reinstatement of prior removal orders under the Immigration and Naturalization Act (which provides for automatic reinstatement of prior removal orders where aliens reenter the U.S. illegally). Pub. L. 106-554, § 1505(c) (Dec. 21, 2000). To take advantage of this provision, Salvadoran ABC class members were required to file any motion to reopen a prior removal by October 16, 2001, 8 C.F.R. § 1003.43(f)(1), and must not have been apprehended at re-entering the U.S. after December 19, 1990, 8 C.F.R. § 1003.43(d)(1).

B.    <u>Factual Background</u>

This matter arises from events surrounding Plaintiff Julian Guardardo's ("Plaintiff") 2008 removal from the United States to his native country of El Salvador.  Plaintiff entered the U.S. on or about April 16, 1990, lacking proper documentation.  (Compl. ¶ 6; MSJ at 5 ¶ 1, Ex. 1.)  On April 19, 1990, the Immigration and Naturalization Service ("INS") assigned him Alien Number A70409876, initiated deportation proceedings, and issued an order to show cause.  (Compl. ¶ 6; MSJ at 5 ¶ 1, Ex. 1.)  On July 9, 1990, after failing to appear at his hearing on that order, the presiding Immigration Judge ordered Plaintiff's deportation.  (MSJ at 6 ¶ 2, Ex. 2.)  But Plaintiff did not leave the U.S. at that time.  (Compl. ¶ 8; MSJ at 6 ¶ 2.)

Defendants allege that sometime before March 8, 1994, Plaintiff was apprehended "near the port-of-entry at San Ysidro, California," but identified himself to Border Patrol agents as "Gabriel Hernandez Flores," receiving a different alien number of A72991336 and another order to show cause at a later hearing. (MSJ at 6 ¶ 3.)  Defendants further allege that Plaintiff did not appear at that hearing.  *Id.*

Plaintiff was again apprehended attempting to enter the United States on September 2, 1998, this time being stopped at or near San Luis, Arizona, and providing his correct name.

(MSJ at 7 ¶ 5, Exs. 5, 6.)  The INS subsequently reviewed Plaintiff's ABC eligibility, finding him ineligible because he was "apprehended at the time of entry after December 19, 1990." (MSJ at 7 ¶ 5, Ex. 6.)

Nonetheless, Plaintiff remained in the U.S. and in 2001 applied for TPS status, which was granted on October 18, 2002, for some reason under a third alien number (A94414668). (MSJ at 7 ¶ 6, Ex. 8.)

Plaintiff was subsequently arrested and convicted twice for driving under the influence of alcohol.  (MSJ at 7 ¶ 7.)  As a result, United States Citizenship and Immigration Services ("USCIS") informed Plaintiff on July 25, 2008, that his TPS status had been revoked.  (MSJ at 7 ¶ 7, Ex. 8.)  A warrant issued on August 1, 2008, for Plaintiff's removal from the U.S. and Plaintiff was removed on September 8, 2008.  (MSJ at 7-8 ¶ 8, Ex. 9.)

Plaintiff filed suit on February 19, 2010, seeking monetary relief against the United States and against Immigrations and Customs Enforcement ("ICE") officer William Allen in his individual capacity.  His claims against the United States include assault (Count 1), battery (Count 2), and false imprisonment (Count 3).  (Compl. at 7-8 ¶¶ 19-21.)  His Claims against Officer Allen include deprivation of access to the courts in violation of the Due Process Clause (Count 1),

deprivation of the first amendment right to petition the
government to redress grievances via access to the courts (Count
2), battery (Count 3), assault (Count 4), and unreasonable
seizure (Count 5).

Defendants moved to dismiss or for summary judgment on
August 19, 2010.  [Dkts. 9-11.]  Plaintiff responded in
opposition on September 7, 2010 ("Resp.").  [Dkt. 16.]  And
Defendants submitted a reply on September 17, 2010 ("Reply").
[Dkt. 19.]  Defendants' Motion to Dismiss or for Summary
Judgment ("MTD") is currently before the Court.

## II. Standard of Review

### A.    Motion to Dismiss – Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a claim may be dismissed
for lack of subject matter jurisdiction.  Fed. R. Civ. P.
12(b)(1).  Defendants may attack subject matter jurisdiction in
one of two ways.  First, defendants may contend that the
complaint fails to allege facts upon which subject matter
jurisdiction may be based.  *See Adams v. Bain*, 697 F.2d 1213,
1219 (4th Cir. 1982).  In such instances, all facts alleged in
the complaint are presumed to be true.  *Id.*  Alternatively,
defendants may argue that the jurisdictional facts alleged in
the complaint are untrue.  *Id.*  In that situation, "the Court
may 'look beyond the jurisdictional allegations of the complaint
and view whatever evidence has been submitted on the issue to

5

determine whether in fact subject matter jurisdiction exists.'"
*Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol
Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see
also Adams*, 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc.
v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994).  In either
case, the burden of proving subject matter jurisdiction falls on
the plaintiff.  *McNutt v. General Motors Acceptance Corp.*, 298
U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219.

> **B.    Motion to Dismiss – Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the legal
sufficiency of a complaint.  *See Randall v. United States*, 30
F.3d 518, 522 (4th Cir. 1994).  In deciding such a motion, a
court must first be mindful of the liberal pleading standards
under Rule 8, which require only "a short and plain statement of
the claim showing that the pleader is entitled to relief."  Fed.
R. Civ. P. 8.  A court must take "the material allegations of
the complaint" as admitted and liberally construe the complaint
in favor of a plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411,
421 (1969).

While Rule 8 does not require "detailed factual
allegations," a plaintiff must still provide "more than labels
and conclusions" because "a formulaic recitation of the elements
of a cause of action will not do."  *Bell Atlantic Corp. v.
Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* at 1965. In its recent decision, *Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) test. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully". *Id.* at 1949. In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## C.  **Summary Judgment**

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In reviewing the record on summary judgment, "the court must

draw any inferences in the light most favorable to the non-

movant" and "determine whether the record taken as a whole could

lead a reasonable trier of fact to find for the non-movant."

*Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th

Cir. 1991) (citations omitted).

### III. Analysis

Defendant argues the following in support of

dismissal or summary judgment. First, that the INA precludes

this Court's subject matter jurisdiction over removal decisions.

Second, that the INA is sufficiently comprehensive to preclude a

*Bivens* remedy against Officer Allen. Third, that Officer Allen

is entitled to qualified immunity from suit. And Fourth, that

removal from the United States is not a cognizable tort.

A.    Subject Matter Jurisdiction

Defendant argues that Congress's 1996 amendment to the

INA, the Illegal Immigration Reform and Immigrant Responsibility

Act ("IIRIRA"), "divest[ed] the district courts of jurisdiction

to review particular immigration actions or decisions,"

including the decisions surrounding Plaintiff's removal. (MSJ

at 12.) Defendant cites 8 U.S.C. § 1252(g), which states,

> Except as provided in this section and
> notwithstanding any other provision of law
> (statutory or nonstatutory), including section
> 2241 of Title 28, or any other habeas corpus

provision, and sections 1361 and 1651 of such title, *no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to* commence proceedings, adjudicate cases, or *execute removal orders against any alien under* this chapter.

(emphasis added).

Following the Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) ("AADC"), there is no question that § 1252(g) "applies only to discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 943; *see also Mapoy v. Carroll*, 185 F.3d 224, 230 (4th Cir. 1999). District courts have no jurisdiction to review these actions.

Plaintiff argues that § 1252(g) should be read narrowly to mean that courts only lack jurisdiction over ICE's *discretionary* decisions (*i.e.*, how and when an alien can be removed) but not over its jurisdiction to remove the alien to begin with. (Resp. at 10.) Plaintiff claims that to rule otherwise would be to repeal statutory and constitutional rights (under *Bivens* and the FTCA) by implication, and that a strong presumption weighs in favor of judicial access to constitutional rights. (Resp. at 11.)

This Court finds little implied about § 1252(g) with respect to the FTCA and *Bivens* in general, as well as with

Plaintiff's actual claims.  Regarding the FTCA and *Bivens*, §
1252(g) is quite clear that "no court shall have jurisdiction to
hear *any* cause or claim arising from the decision . . . to . . .
execute removal orders."  (emphasis added).  The use of the word
"any" obviated the need for the statute to list out *every*
possible cause or claim it barred.  *Cf. United States v.
Gonzales*, 520 U.S. 1, 5 (1997).  Indeed, by Plaintiff's logic,
it is unclear what statutory or constitutional rights 1252(g)
applies to, if any.

Numerous courts share this interpretation.  *Sissoko v.
Rocha*, 509 F.3d 947, 949 (9th Cir. 2007) (barring *Bivens* claim
by alien alleging improper detention under § 1252(g)); *Foster v.
Townsley*, 243 F.3d 210, 214 (5th Cir. 2001) (although officials
may have executed removal order despite requirement of an
automatic stay, "a plain reading of the statute demonstrates
that Congress did not exclude non-discretionary decisions from
this provision limiting review"); *Humphries v. Various Federal
USINS Employees*, 164 F.3d 936, 945 n.10 (5th Cir. 1999)
(rejecting the argument that "§ 1252(g) may not be read to deny
an alien a judicial forum for a colorable constitutional claim
for money damages under *Bivens*"). These cases make clear that,
where a claim arises from one of the three distinct actions
identified in *AADC*, the subject matter jurisdiction question is
over.

This does not mean, however, that § 1252 leaves aliens without judicial recourse to challenge those actions. Rather, §§ 1252(b)(5) and 1252(b)(9) specifically prescribe that the "sole and exclusive means for judicial review of an order of removal" is through "a petition for review with an appropriate court of appeals." These provisions form what is known as the "zipper clause," channeling all removal challenges into the courts of appeals for review. *AADC*, 525 U.S. at 483.

The Zipper Clause eliminates the concern raised by Plaintiff's hypothetical scenario that, under the government's reading of § 1252(g), it "could simply in the middle of a removal hearing, and without a final order of removal, remove an alien," with federal courts "divested from [hearing] challeng[es] [to] this unlawful act." (Resp. at 14.) The clause also obviates the concern raised in the single case Plaintiff cites in support of his argument, *Medina v. United States*, 92 F. Supp. 2d 545 (E.D. Va. 2000), *vacated on other grounds*, 259 F.3d 220 (4th Cir. 2001). There Judge Lee was concerned that a broad reading of § 1252 would preclude judicial review of a claim stemming from an arrest on a detention order "even where there [was] blatantly lawless and unconstitutional conduct by the INS agents," "creating grave constitutional issues." *Id.* at 554. The Fifth Circuit also noted the same risk of a "serious constitutional question" if the avenues of a petition for review

or for habeas corpus became unavailable to aliens. *Humphries*,
164 F.3d at 945 n.9. Indeed, following the REAL ID Act, Pub. L.
109-13, 119 Stat. 302 (2005), habeas corpus is now explicitly
excluded by § 1252(g) from district courts' subject-matter
jurisdiction. Still, petitioning for review by courts of
appeals via the Zipper Clause remains a viable option for
aliens. Grave constitutional concerns are therefore avoided.

The question before this Court is, then, whether
Plaintiff's claims fall outside this Court's subject matter
jurisdiction because they arise entirely from one of the three
distinct actions identified in *AADC*. This Court finds that they
do. The Complaint in this case arises entirely from Plaintiff's
removal. (*See* Compl. ¶ 1 ("As a result of the unlawful removal
from the United States, the Immigration Court was divested of
jurisdiction to hear Mr. Guardado's claim . . . .").) The fact
of Plaintiff's removal is what makes his alleged assault an
assault, his alleged battery a battery, his alleged false
imprisonment a false imprisonment. Indeed the sole *action* the
Complaint accuses Defendant Allen of taking is removing
Plaintiff. (Compl. ¶¶ 22, 23, 24, 25, 26.) Because Plaintiff's
claim rests entirely upon execution of an order of removal, it
is barred from this Court's subject-matter jurisdiction.

B. *Bivens*

Defendant argues that even if this Court has subject-matter jurisdiction, a *Bivens* remedy against Defendant Allen is inappropriate, because the INA provides a comprehensive remedial scheme. In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 397 (1971), the Supreme Court recognized an implied cause of action for damages against federal officers alleged to have violated the petitioner's Fourth Amendment Rights. Since then, *Bivens* has been extended only twice, the last time being thirty years ago. *See Davis v. Passman*, 442 U.S. 228, 230 (1979) (violations of Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14, 19 (1980) (violations of Eighth Amendment Cruel and Unusual Punishments Clause).

Defendant argues that *Bivens* should not be extended to include Plaintiff's claims because the INA functions as a comprehensive remedial scheme governing claims in the area. (MSJ at 18-19.) Of course that question is only implicated where Plaintiff's *Bivens* claims extend into areas where *Bivens* remedies have not already been realized. This Court must first consider whether Plaintiff's *Bivens* claims fit within currently recognized *Bivens* actions, or whether they seek to extend *Bivens* to new contexts. *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) (en banc).

Plaintiff's first *Bivens* claim alleges that Defendant Allen violated his Fifth Amendment due process right to a fair hearing by removing him. (Compl. ¶ 22.) The Supreme Court extended *Bivens* to Fifth Amendment Due Process claims in *Davis v. Passman*. 442 U.S. at 244. This Claim therefore does not require extension of *Bivens* into a new area.

Plaintiff's three Fourth Amendment claims all essentially allege an unconstitutional seizure. (Compl. ¶¶ 24, 25, 26.) *Bivens* itself recognized an implied remedy for improper Fourth Amendment searches and seizures. 403 U.S. at 397; *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 736-37 (2004) (listing *Bivens* as providing damages for such Fourth Amendment violations as improper seizure of an alien). These claims therefore also do not require an extension of *Bivens*.

Plaintiff's remaining *Bivens* claim alleges that, by removing Plaintiff, Defendant Allen violated Plaintiff's First Amendment right to petition the government for redress of grievances. (Compl. ¶ 23.) The Supreme Court has not recognized a corresponding *Bivens* action; indeed it declined to do so because of a comprehensive federal scheme (protecting civil servants from arbitrary actions by supervisors) in *Bush v. Lucas*, 462 U.S. 367, 388-89 (1983). The question is whether a similar comprehensive remedial scheme exists here.

Defendants point to the INA as providing such a scheme. Generally speaking, "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. . . . [O]ver no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993) (internal citations omitted). The Second Circuit likewise recognized the "complexity of the remedial scheme Congress has created (and frequently amended)," noting that because of it, the court "would ordinarily draw a strong inference that Congress intended the judiciary to stay its hand and refrain from creating a *Bivens* action." *Arar*, 585 F.3d at 573.

Nonetheless, the Second Circuit declined to establish a general rule that the INA bars all *Bivens* claims in the context of immigration. *Id.* Noting significant irregularities in that particular case (an alleged extraordinary rendition that involved denial of a request to contact an attorney or family, misleading of the alien's lawyer, and even serving the removal order during the removal itself), the Court was uncertain whether the INA adequately provided a comprehensive remedial scheme, and instead rejected the *Bivens* claim on other grounds. *Id.* at 571, 577. Plaintiff appears to argue that irregularities in his case raise similar doubts. (Resp. at 21.)

Plaintiff argues that although the INA is comprehensive, it only affords review of *final* orders, meaning that an alien removed prior to a final order (as Plaintiff alleges he was) lacks a "meaningful statutory mechanism to review [the] removal." *Id.* Plaintiff argues that he lacks a remedial mechanism despite the fact that he is *currently* pursuing an appeal of his removal with the Board of Immigration Appeals ("BIA"), in which he is arguing that the BIA "possesses the authority to compel [the Department of Homeland Security] to return Mr. Guardado to the United States." (MSJ Ex. 13 at 11.) Moreover, under 1252(b)(9), Plaintiff will be able to petition for review with the Fourth Circuit if he does not prevail before the BIA. Not to mention that he was removed pursuant to a final order of removal--albeit one he claims was invalid. (Resp. at 21.)

It therefore appears that the only sense in which Plaintiff's removal may be going unreviewed is that Plaintiff lacks the opportunity for *money* damages. There is no "automatic entitlement" to a *Bivens* damages remedy, however. *Wilkie*, 551 U.S. at 550. And because the INA provides a remedial scheme that encompasses Plaintiff's first amendment claim, this Court declines to recognize a new *Bivens* action for that claim.

C.  <u>Qualified Immunity</u>

Defendant Allen additionally argues that, with respect to the *Bivens* claims, he is protected by qualified immunity. The doctrine of qualified immunity shields government officials from civil liability for conduct that does not violate clearly established rights that a reasonable person would have known about.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It balances the need to hold public officials accountable for abuses of power with the need to protect them from harassment, distraction, and liability in performing their public duties. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).  It is intended to be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In general, questions of qualified immunity are resolved through a two-step inquiry: first, the court establishes whether the facts alleged make out a violation of a constitutional right; second, the court decides whether the right at issue was "clearly established" at the time of the alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194, 212-13 (2001).

1. *Do the facts alleged make out violations of*
   *constitutional rights?*

Defendant claims that references to Officer Allen are cast entirely in conclusory terms and present no factual allegations against him and that Officer Allen is protected

18

regardless because he was executing a facially valid removal order. Putting aside the issue of conclusory allegations, Police officers receive qualified immunity when executing facially valid arrest warrants, so long as the warrants are not so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). The same deference must be called for here. A federal officer executing a warrant of removal is entitled to qualified immunity unless the order is so lacking in indicia of reliability as to render official belief in its existence unreasonable.

Examining the warrant at issue in this case, belief in its validity would have been reasonable. (*See* MSJ Ex. 9.) It informs "any officer of the United States Bureau of Immigration and Customs Enforcement," that Plaintiff is "subject to removal/deportation . . . based on a final order by: an Immigration Judge in exclusion, deportation, or removal proceedings." *Id.* And it commands the officer "to take into custody and remove from the United States the above-named alien." *Id.* Plaintiff states no argument as to Officer Allen's knowledge to the contrary, nor any reason Officer Allen should have known that his actions in executing the warrant were allegedly unconstitutional. Officer Allen is therefore entitled to qualified immunity.

Turning to the sufficiency of the claims as pled, all are essentially variations on a single premise: that under § 1505(c)(1)(A) of the LIFE Act and Plaintiff's membership in the ABC Class, Plaintiff's prior removal order could not be reinstated, meaning that he should not have been deported--a claim he presumably would have argued had he not been removed prior to his removal hearing. (Compl. ¶¶ 8, 10, 12, 15.) It is entirely unclear to the Court how exactly Plaintiff can state so definitively that the prior removal order could not have been reinstated.

True, the LIFE Amendments state that a NACARA applicant "shall not be barred from applying for [cancellation of removal] by operation of section 241(a)(5)," Pub. L. 106-554, § 1505(c), but they also set a deadline of October 16, 2001 for filing *one* application to reopen prior removal proceedings. How exactly does that create an "absolute prohibition against reinstatement of prior removal orders" as a general matter? (*See* Compl. ¶ 12.)

Case law cited by Plaintiff in favor of this proposition neither explains nor overcomes this conundrum. Beginning with *Aguilar de Polanco v. U.S. Department of Justice*, 398 F.3d 199, 202 (2d Cir. 2005), the Second Circuit merely described the Life Amendment as "expressly allow[ing] aliens rendered eligible by the [LIFE Act] to make a single motion to

reopen their immigration proceedings, within a fixed time period." Likewise in *Lino v. Gonzales*, 467 F.3d 1077 (7th Cir. 2006), the Seventh Circuit noted that "[i]n 2000, Congress specifically exempted certain aliens applying for adjustment of status from [reinstatement of removal orders]," but went on to describe these as "limited exemptions." *Id.* at 1080. Finally, in *Berrum-Garcia v. Comfort*, 390 F.3d 1158 (10th Cir. 2004), the Tenth Circuit merely referenced "specific exemptions Congress made" for certain aliens as proof that it did not intend to create exceptions for other classes of aliens. *Id.* at 1164 n.7.

The Court searches in vain for any basis within this authority--let alone any other authority--to support Plaintiff's claims. And this question is central to the viability of Plaintiff's *Bivens* claims. For instance, Counts One and Two allege violations of Mr. Guardado's access to the courts, in violation of the Fifth and First Amendments, respectively. The right of access to the courts has indeed been grounded in the Fifth Amendment Due Process Clause, *Murry v. Giarratano*, 492 U.S. 1, 11 n.6 (1989), as well as the First Amendment Petition Clause, *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). Such claims require the plaintiff to plead the act which obstructed his access, as well as a *valid* underlying cause of action. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

The Complaint sets forth the allegedly obstructing act: removal of Plaintiff from the U.S. before his removal hearing. (Compl. ¶¶ 22, 23.) And the Complaint alleges Plaintiff's underlying claim: that because of § 1505(c)(1)(A) of the LIFE Act Amendments of 2000 and his membership in the ABC Class, his prior removal order could not be reinstated, a claim he presumably would have argued had he not been removed prior to his removal hearing. (Compl. ¶¶ 8, 10, 12, 15.) Still, absent actual support for the notion that the LIFE Amendments precluded reinstatement of prior orders (thereby possibly creating a statutory entitlement for Plaintiff), Plaintiff cannot claim deprivation of access to the Courts.

> 2. *Does the Complaint show that any well-*
>    *established constitutional rights were*
>    *violated?*

Even if Plaintiff adequately alleges violation of a right, this Court's difficulty in elucidating that right is telling as to whether it was well-established at the time of Plaintiff's removal. A right is "clearly established" where "it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 213. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). And "th[e] very need for complex legal analysis . . . renders a denial of qualified

immunity []appropriate in this case." *Hodge v. Jones*, 31 F.3d 157, 167 (4th Cir. 1994). Here, even complex legal analysis hardly yields a bright line rule that an officer on the ground, faced with a facially valid removal order, could be expected to follow. Thus Defendant Allen is entitled to qualified immunity.

      D.    <u>Federal Tort Claims</u>

          *1. Removal as a Tort*

      Again putting aside the subject-matter jurisdiction issue, with respect to the FTCA claims against the United States, Defendants argue that because they lack concomitant duties in state law, dismissal is warranted. Defendants further argue that Plaintiff's claim for battery via incarceration lacks merit because the evidence shows that Plaintiff was not eligible for protection from incarceration under the ABC agreement, thus warranting summary judgment.

      The FTCA waives sovereign immunity for injuries or losses caused by the negligent or wrongful act of a government employee acting within the scope of his employment. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). It permits tort liability for the U.S. in the same manner as for a private person under the law of the place where the act occurred. *Id.* It "does not create new causes of action," rather it "serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty

23

under federal law that is analogous to a duty of care recognized by state law." *Id.*

The primary question raised by Defendants is whether such a duty of care can be recognized by state law in this instance. Because the DHS officials' alleged torts took place in Virginia, Virginia law is at issue. *Id.* (citing *United States v. Neustadt*, 366 U.S. 696, 706 n.15 (1961). Defendant first argues that, rather than conforming to the actual common law torts alleged (assault, battery, and false imprisonment), Plaintiff's claims actually attempt to introduce a new tort-- false removal--under the guise of these established ones. (MSJ at 34-35.) The Court agrees.

Simply put, the act of removal, by itself, cannot give rise to a cognizable tort in the state of Virginia. Plaintiff cites no case to the contrary (besides *Castro v. United States*, 560 F.3d 381 (5th Cir. 2009), which Plaintiff fails to note was reversed *en banc*), nor is this Court aware of any such case. This dearth of caselaw makes sense because states are in no position to individually decide the propriety of federal removal orders. Immigration decisions and policy are solely the domain of the federal government. *See Reno*, 507 U.S. at 305 ("the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. . . . [O]ver no

conceivable subject is the legislative power of Congress more complete."). Uniformity of policy is both practically essential, *see Renteria-Gonzales v. INS*, 322 F.3d 804, 815 (5th Cir. 2003), and constitutionally mandated. U.S. Const. art. I, § 8, cl. 4 ("To establish a *uniform* Rule of Naturalization.") (emphasis added). It would virtually guarantee inconsistent application of the government's removal authority to subject it to state court review under individual state tort standards.

It is of no matter that the specific acts alleged in the complaint are not the actual act of "removal" but rather are acts such as "handcuffing" Plaintiff, or "plac[ing] him on an airplane." (*See, e.g.*, Compl. ¶ 19.) Nor does it matter that there are an "infinite number of fact patterns in which a person's unlawful removal could result in a common law cause of action." (*See* Resp. at 33.) The act of removal is still the alleged tort. More precisely, the removal's alleged unlawfulness is what makes the other acts (*e.g.*, handcuffing) allegedly unlawful. It is not an assault, battery, or false imprisonment, if removal was not improper.

## 2. Propriety of Incarceration

Defendant argues that, to the extent Plaintiff claims his detention, in and of itself, constituted a battery, the facts show no dispute as to whether that detention was appropriate. Defendant cites the provision in the ABC

25

settlement that held: "The INS may only detain class members, eligible for relief under paragraph 2, who are otherwise subject to detention under current law . . . ." *ABC* at 804. "Paragraph 2" precludes from eligibility "[c]lass members apprehended at the time of entry after the date of preliminary approval of this agreement." *Id.* at 800.

Defendant presents evidence supporting this claim in the form of the record of Plaintiff's apprehension, as well as a letter informing Plaintiff of its impact on his ABC Class Membership status. (MSJ Exs. 5, 6.) Plaintiff offers no response to this argument and appears to agree that on September 2, 1998, Plaintiff was apprehended re-entering the U.S. (Resp. at 4.) It therefore appears that no dispute exists as to this issue, and to the extent Plaintiff's battery claim rests on his incarceration in the U.S., this Court will grant summary judgment with respect to that claim.

## IV. Conclusion

For the reasons stated above, the Court will dismiss the Complaint in its entirety for lack of subject matter jurisdiction.


| | /s/ |
|---|---|
| September 30, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |